1  ANDREW L. PACKARD (State Bar No. 168690)
   MICHAEL P. LYNES (State Bar No. 230462)
2  Law Offices of Andrew L. Packard
3  319 Pleasant Street
   Petaluma, CA 94952
4  Tel: (707) 763-7227
   Fax: (707) 763-9227
5  E-mail: andrew@packardlawoffices.com

6
   Attorneys for Plaintiff CALIFORNIA SPORTFISHING
7  PROTECTION ALLIANCE

8
9  RUBEN A. CASTELLON (Stat Bar No. 154610)
   Stanzler Funderburk & Castellon LLP
10 180 Montgomery Street, Suite 1700
   San Francisco, CA 94104-4205
11 Tel: (415) 677-1450
   Fax: (415) 677-1476
12 Email: rcastellon@sfcfirm.com
13

14 Attorneys for Defendant COURT GALVANIZING, INC.

15
                  **UNITED STATES DISTRICT COURT**
16
                  **EASTERN DISTRICT OF CALIFORNIA**
17

18 CALIFORNIA SPORTFISHING            Case No. Case No. 2:05-CV-02328-DEL-GGH
   PROTECTION ALLIANCE, a
19 non-profit corporation,               **CONSENT DECREE**

20            Plaintiff,
                                      (Federal Water Pollution Control Act,
21       vs.                          33 U.S.C. §§ 1251 to 1387)

22 COURT GALVANIZING, INC., a
   corporation,
23
              Defendant.
24

25       **WHEREAS**, Plaintiff California Sportfishing Protection Alliance (hereinafter

26 "CSPA" or "Plaintiff"), a non-profit corporation dedicated to the protection, enhancement

27 and restoration of the wetlands, rivers, creeks and tributaries of the Sacramento River, the

28 Sacramento-San Joaquin Delta estuary and other waters in the State of California;

**WHEREAS,** Defendant Court Galvanizing, Inc. is a corporation organized under the laws of the State of California;

**WHEREAS**, Defendant owns and operates a hot-dip, zinc galvanizing facility located at 4937 Allison Parkway in Vacaville, California (the "Facility"), where Defendant engages in hot dip galvanizing, including shipping, receiving, processing, handling, sorting, storing of materials and maintenance;

**WHEREAS**, Defendant discharges storm water at the Facility pursuant to State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter, the "General Permit").  A map of the Facility is attached hereto as Exhibit 1 and incorporated by reference;

**WHEREAS**, on or about September 8, 2005, CSPA served Defendant, the United States Attorney General, the national and Region IX offices of the United States Environmental Protection Agency, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board - Central Valley Region ("Regional Board") with a Notice of Violation and Intent to File Suit ("60-Day Notice") under Sections 505(a)(1) and (f) of the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365(a)(1) and (f);

**WHEREAS,** the 60-Day Notice alleged that Defendant has violated and continues to violate Sections 301(a) and 402(p) of the Clean Water Act, 33 U.S.C. § 1311(a) and 1342(p), due to discharges of polluted storm water from the Facility in violation of the General Permit;

**WHEREAS**, on November 17, 2005, CSPA filed a complaint against Defendant in the United States District Court for the Eastern District of California, entitled *California Sportfishing Protection Alliance v. Court Galvanizing, Inc.* (Case No. 2:05-CV-02328-DEL-GGH) (hereinafter "Complaint" or "Action"), a true and correct copy of the Complaint as

well as the 60-Day Notice is attached hereto as Exhibit 2;

  **WHEREAS**, CSPA and Defendant (hereinafter, collectively referred to as the "Settling Parties") have agreed that it is in the parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

  **WHEREAS**, after agreement of the parties to this proposed Consent Decree, the proposed Consent Decree will be submitted to the United States Department of Justice and the national and Region IX offices of the United States Environmental Protection Agency for the statutory review period pursuant to 33 U.S.C. § 1365(c) at least 45 days prior to the submittal of this Consent Decree to the Court for entry;

  **WHEREAS**, all actions taken by the Settling Parties pursuant to this Consent Decree shall be taken in compliance with all applicable federal, state and local rules and regulations;

  **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

  1. Court Galvanizing agrees, to the extent it has not already done so to operate the Facility in compliance with the applicable requirements of the General Permit and Clean Water Act.  If, because of any other court order, change in law, and/or upon the effective date of an amended or revised General Permit, Court Galvanizing agrees to comply with the controlling law, including revisions to the General Permit as authorized by law.

  2. In order to prevent storm water from coming into contact with contaminants at the Facility and/or to prevent the discharge of waste, contaminated storm water from the Facility into the waters of the State and of the United States, Court Galvanizing shall implement additional and/or different structural and non-structural best management practices ("BMPs") as described more fully below.  Court Galvanizing shall maintain all structural BMPs at the site in good operating condition.  The effectiveness of the BMPs shall

be measured by comparing analytical results of storm water discharge samples with the "Benchmark Levels" set forth in Exhibit 3, which is hereby incorporated by reference. Exceeding benchmark levels shall cause the initiation of actions as discussed below.

**Improvements to the Facility's Storm Drain Channel and Discharge Point; Sweeping**

3.     As of the Effective Date of this Consent Decree and/or within the 2006- 2007 rainy season, Court Galvanizing shall improve the existing fabric filters installed in the facility's storm drain drop inlets by replacing the existing filters with bag filters consistent with the criteria set forth in Exhibit 4.

4.     As of the effective Date of this Consent Decree and/or within the 2006- 2007 rainy season, Court Galvanizing shall sweep all portions of the Facility exposed directly or indirectly to rainfall using a regenerative sweeper.  A regenerative sweeper is described in Exhibit 5, which is incorporated by reference.  The facility shall be swept using the regenerative sweeper at least once per month during the dry season, and at least once per week during the rainy season.  Additional mechanical or hand-sweeping shall occur on a daily, as-needed basis.  Court Galvanizing's sweeping program and SWPPP shall specifically set forth a sweeping protocol for areas of the facility exposed directly or indirectly to rainfall where galvanized materials have been stored and removed but prior to the placement of any other materials in that location.  To the extent Court Galvanizing chooses to lease or contract for a regenerative sweeping service at the facility, Court Galvanizing will make available a copy of such lease agreement or contract to CSPA upon CSPA's request.

**Tiered Action Approach to Exceedance of Zinc EPA Benchmarks**

5.     The United States Environmental Protection Agency has established benchmarks for existence of certain substances or conditions of storm water which serve as "levels of concern," the exceedance of which may indicate the need for evaluation of currently used "Best Management Practices" (BMPs) and which may indicate the need for other corrective action.  In light of these benchmarks, in addition to the actions specified in

the above section, the parties agree to take action based on a tiered approach of averaged storm water samples.  **The limits referenced below refer to the averaged sampling of any two samplings from the same discharge point from two *consecutive* Qualifying Rain Events[1].**

6.   Regardless of the status of final approval of this settlement, the testing for zinc shall commence for rain events subsequent to January 2, 2007.  Court Galvanizing shall test no less than two Qualifying Storm Events between the dates of January 2, 2007 and May 31, 2007 and two Qualifying Storm Events between October 1, 2007 and May 31, 2008.[2]  To the extent possible, Court Galvanizing shall collect samples during storm events that meet the criteria set forth in the General Permit, which include:  (i) the samples are preceded by at least three (3) working days during which no storm water discharges from the Facility have occurred; (ii) the samples are collected within the first hour that flow is observed at the Discharge Point being sampled; and (iii) the samples are collected during daylight operating hours.

a.   In the event no Qualifying Storm Event has occurred by March 1 of each of the wet seasons covered by this Consent Agreement, Court Galvanizing shall continue to make best efforts to comply with the sampling frequency obligations set forth herein and shall collect samples from storm events that are non-qualifying to the extent they are not preceded by three (3) working days during which no storm water discharges have occurred.  Samples taken pursuant to this paragraph may be used to satisfy the requirements of Paragraph 6 if an insufficient number of Qualifying Storm Events has occurred in any given Wet

---

[1] A "Qualifying Rain Event" is rain event that is preceded by at least three days without rain and that causes a discharge or discharges of storm water from the facility during normal business hours.  General Permit Section B(4).

[2] The parties presume that sufficient rainy day events, i.e., rain sufficient to create storm water drainage, will take place to permit the required amount of testing.  In the event that insufficient rainy events occur, Court Galvanizing shall test to the maximum extent permitted by the rainy events.

Season.

      b.      Nothing in this Consent Decree shall preclude further or other testing as required by law.

7.  If the amount of zinc exceeds 0.117 milligrams per liter, but is less than 1.0 milligrams per liter, in addition to, and in compliance with, recordation and memorialization requirements set forth below, Court Galvanizing shall initiate a meet and confer with CSPA to discuss the cause of the exceedance and potential actions which may be necessary to bring the samplings to a level less than 0.117.  The parties shall negotiate in good faith; however, Court Galvanizing shall not be required to take action in excess of its then existing BMPs, or actions specified in the section above, unless the matter is submitted to the undersigned pursuant to this Consent Decree, and such a remedy is required.

8.  If the amount of zinc exceeds 1.0 milligram per liter, but is less than 2.0 milligrams per liter, a presumption will exist that Court Galvanizing's metal storage activities are causing storm water to be excessively impacted by zinc.  Unless Court Galvanizing can clearly and convincingly demonstrate that an extraordinary, one-time, event not associated with the storage of galvanized products has caused the exceedance, Court Galvanizing shall take additional measures that may include but are not limited to tarping its stored materials, roofing its storage activities and/or filtering the storm water.  No presumption exists that the entire storage area needs to be tarped, roofed and/or that the entire amount of storm water needs to be filtered.  The parties shall negotiate in good faith concerning the cause and location of the activity causing the exceedance, and the location of the tarping/roofing/filtering activities.  The strength of the presumption referenced herein shall be proportionate to the level of the exceedance.  If the parties cannot agree on the appropriate remedy, the matter will be submitted to the Magistrate Judge pursuant to this Consent Decree for settlement or designation of an appropriate remedy, or determination of the exception.

9. If the amount of zinc exceeds 2.0 milligrams per liter, but is less than 4.5

milligrams per liter, with one exception, an irrebuttable presumption shall exist that the exceedance is caused by uncovered materials in the Court Galvanizing storage yard. Court Galvanizing shall be required to partially or wholly roof its storage area and/or filter storm water and/or some other alternative that will be equally efficient in preventing or reducing the discharge of zinc in storm water from the Facility. With one exception, a rebuttable presumption exists that the entire storage area is required to be roofed or all storm water filtered or that some other method must be implemented. Court Galvanizing may demonstrate by clear and convincing evidence that the exceedance has been caused by a particular source or practice, i.e. lack of roofing in one area, or that only a certain portion of storm water needs to be filtered. The one exception to the presumptions in this paragraph is the clear and convincing showing that the exceedance has been caused by an extraordinary event that is not associated with Court Galvanizing's normal operations. If the parties cannot agree on the appropriate remedy, the matter shall be submitted to the Magistrate Judge pursuant to the procedures described below for settlement of or designation of an appropriate remedy, or determination of the exception.

10. If the amount of zinc exceeds 4.5 milligrams per liter, Court Galvanizing shall roof its entire galvanized product storage area unless Court Galvanizing can demonstrate with clear and convincing evidence that another Best Management Practice will equally prevent or reduce the discharge of zinc in storm water from the Facility or unless Court Galvanizing can demonstrate that the exceedance is caused by an extraordinary event. In the event that the parties cannot agree upon the existence of a one-time event, the matter will be submitted to the Magistrate Judge pursuant to the procedures below.

11. Extraordinary events causing exceedances shall be the subject of good faith meet and confer sessions between Court Galvanizing and plaintiffs. Careless or otherwise avoidable one-time events causing an exceedance may be the subject of remedial action by the Magistrate Judge pursuant to the procedures described below.

Exceedance of Other EPA Benchmarks

12. Court Galvanizing shall, commencing with January 2007 up through May 31,

2007, test its storm water runoff for all pollutants required by the General Permit and the following additional metals: cadmium, nickel, aluminum, lead.  If the average level of aluminum, cadmium, nickel or lead in two samples taken from the same discharge point at the Facility for two consecutive Qualifying Storm Events does not exceed the applicable EPA Benchmark Value, Court Galvanizing may cease testing for the particular parameter insofar as this Consent Decree is concerned, but not as otherwise required by law.

13.  For those substances and conditions described in paragraph 12 whose averaged levels exceed EPA benchmarks, Court Galvanizing and plaintiffs shall meet and confer with the purpose of bringing such exceedances within benchmark levels.  Testing for the substances/conditions in excess of EPA benchmarks shall continue for a total of two tests per rainy season during the pendency of this Consent Decree.  No court action within this settlement process shall be commenced by CSPA until remedies for the exceedance have been explored and implemented on at least one occasion.  Disputes concerning this paragraph may be finally submitted to the Magistrate Judge pursuant to the procedures described below.

14. If tarping is undertaken, Court Galvanizing shall cover with water resistant tarps its galvanized products stored or processed in areas that are exposed to rainfall.   All galvanized products stored in areas that are exposed to rainfall shall also be stored on pallets or elevated from the ground to the extent possible in order to prevent them from being exposed to storm water flowing along the ground.  The type of tarp and its installation shall be effective to minimize any rainfall from coming into contact with the galvanized products.  Notwithstanding these tarping requirements, Court Galvanizing may suspend its tarping of galvanized products each year during the dry season from June 1 through September 30.  In addition to the monitoring and reporting measures currently employed at the Facility, Court Galvanizing will document the effectiveness of these tarping measures by inspecting the deployed tarps at least once per month during the rainy season.  Court Galvanizing will also take photographs to the extent practicable for each documented inspection.

15. During the rainy season, Court Galvanizing shall inspect all tarps and galvanized products during every rain event occurring at the Facility that results in a storm water discharge.  Court Galvanizing shall maintain a written log of each such inspection, including the date, time as part of the SWPPP.

**Sampling, Monitoring, Inspection and Reporting**

**In addition to, or in conformance with, any recordation, sampling, monitoring or inspecting activities described above, or otherwise required by law:**

16. Court Galvanizing shall maintain logs of all sweeping activities at the Facility, including date as part of the SWPPP.

17. All photographs required by this Consent Decree shall be in color.  Any photograph taken pursuant to this Consent Decree will be provided to CSPA upon request.

18. Court Galvanizing shall collect samples from the Facility's existing monitoring locations.

19.  Court Galvanizing shall maintain a log of all rain events occurring at the Facility during scheduled working hours, day or night, including date, duration, and estimates or narrative descriptions of flow rates to each of the facility's drop inlets.  Such log shall be made available to CSPA upon request.

20. All samples collected from the Court Galvanizing Facility shall be delivered to a California state accredited environmental laboratory and shall be analyzed in accordance with the provisions of the General Permit.

21. Analytical methods used by Court Galvanizing or its analytical laboratory shall be adequate to detect the individual constituents at or below the Benchmark Levels set forth in Exhibit 3.  Results from Court Galvanizing's sampling and analysis shall be provided to CSPA within fourteen (14) days of receipt of the final written laboratory report from each sampling event.

22. Within 60 days or no later than August 1 of each year during the term of this

consent judgment after receiving monitoring data that indicate that storm water discharge from the Facility contains pollutants in excess of the EPA Benchmark Values set forth in Exhibit C, Court Galvanizing shall prepare a report as required by Section C of the General Industrial Storm Water Permit ("the Report").  The Report shall describe the source of the pollutants at issue, existing BMPs, and additional BMPs that will be implemented to prevent or reduce the discharge of the pollutants.  Court Galvanizing will provide a copy of the Report to CSPA and the Regional Board.  CSPA may review and comment on a Report and suggest any additional pollution prevention measures it believes are appropriate.

23. Such Report shall be sent to CSPA via overnight delivery or e-mail upon its completion.  CSPA may review and comment on any additional measures.  When requested by CSPA within 14-days of receipt of such Report, CSPA and Court Galvanizing shall meet and confer and may conduct a site inspection within 30-days of the due date of the Report to discuss the contents of the Report and the adequacy of proposed measures to improve the quality of the Facility's storm water to Benchmark Levels.  If within 14-days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Report, the parties agree to seek a conference with the Magistrate Judge assigned to this action.  If the parties fail to reach agreement on additional measures, either party may bring a motion before the Magistrate Judge consistent with Paragraph 33 below.  If CSPA does not request a meet and confer regarding the Report within a twenty-one (21) day comment period, CSPA shall waive any right to object to such Report pursuant to this Consent Decree.

24.  Any concurrence by CSPA with regard to the reasonableness of any additional measures implemented by Court Galvanizing shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water into compliance with the Benchmark Levels or water quality criteria.

25. In addition to any site inspections conducted as part of meeting and conferring on additional measures set forth above, Court Galvanizing shall permit representatives of CSPA

to perform up to one (1) site visit to the Facility during the 2007-2008 wet season and one (1) site visit to the Facility during the 2008-2009 wet season.  Additionally, if Court Galvanizing prepares a Report as described in Paragraphs 22 and 23 above, Court Galvanizing shall permit CSPA one (1) additional site visit after August 1, 2008.  The site visits will take place during normal daylight business hours and will not last longer than two hours, unless otherwise agreed.  CSPA will be limited to sending a maximum of two representatives for the site visit, unless otherwise agreed.  CSPA will provide Court Galvanizing with notice at least seven (7) business days prior to the scheduled visit.

26. During the life of this Consent Decree, Court Galvanizing shall provide CSPA with a copy of all documents submitted to the Regional Water Quality Control Board and the State Water Resources Control Board as required by the General Permit.  Such documents and reports shall be mailed to CSPA contemporaneously with submission to such agency.

27. Court Galvanizing shall seek to reduce all storm water discharges or limit storm water discharges from the Facility by the expiration date of this Consent Decree to the applicable Benchmark Levels set forth in Exhibit 3.  If there are storm water discharges which have not achieved Benchmark Levels by the expiration of this Consent Decree, the Parties, pursuant to paragraph 33 below, will meet and confer to discuss whether any additional measures are feasible or appropriate. If a resolution is not met, the assigned Magistrate Judge shall have jurisdiction to resolve any differences.

28. Within thirty (30) days of the Effective Date of this Consent Decree, Court Galvanizing shall amend the Facility Storm Water Pollution Prevention Plan ("SWPPP") to incorporate all changes, improvements and best management practices set forth in this Consent Decree.  A copy of the amended SWPPP shall be provided to CSPA within seven (7) business days of completion.

## II.   MITIGATION FEES AND COSTS

29.     As mitigation of the violations alleged in CSPA's Notice and Complaint, Court Galvanizing shall pay the sum of $35,000.00, (the "Payment") to the Rose Foundation for

Communities and the Environment ("Rose Foundation").  The Payment shall be conditioned on the following:  (a) the Payment or any portion thereof shall not be disbursed or otherwise granted directly or indirectly to CSPA, (b) projects funded by the Payment shall be designed to benefit water quality in the lower Sacramento River, the Sacramento-San Joaquin River Delta, the upper San Francisco Bay or their tributaries, and (c) projects funded by the Payment shall be designed to benefit water quality within 60 miles of the Facility.  Within forty-five (45) days of the Effective Date of the Consent Decree, Court Galvanizing shall make the Payment to the Rose Foundation.

30.    Court Galvanizing shall reimburse CSPA in the total amount of $62,000.00 to defray CSPA's investigation fees and costs, expert fees and costs, reasonable attorneys' fees, and all other costs incurred as a result of investigating the activities at the Facility, bringing these matters to Court Galvanizing's attention, and negotiating a resolution of this action in the public interest.  Such payment shall be made within forty-five (45) days of the Effective Date of the Consent Decree.

31.    Unless otherwise ordered by the Court pursuant to the terms of this Consent Decree, Court Galvanizing will not reimburse CSPA for reasonable costs and fees associated with monitoring Court Galvanizing's compliance with this Consent Decree.  Monitoring activities include site inspections, review of water quality sampling reports, review of annual reports, discussion with representatives of Court Galvanizing concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions and mediation, water quality sampling, etc.

III.    **Dispute Resolution and Enforcement of Consent Decree**

32.    The Effective Date shall be the date this Consent Decree is approved and entered by the Court.  The Consent Decree shall continue in effect until September 30, 2009.  This Court shall retain jurisdiction in this matter from the Effective Date through the date of its termination, for the purposes of enforcing the terms of this Consent Decree.  In addition, following the date of termination of this Decree, this Court shall retain jurisdiction for the

purposes of enforcing this Decree for any disputes which arose prior to the termination of the Consent Decree.

33.     Except as specifically noted herein, any disputes with respect to any of the provisions of this Consent Decree shall be resolved through the following procedure.  The parties agree to first meet and confer to resolve any dispute arising under this Consent Decree.  The Parties shall meet and confer within fourteen (14) days of receiving written notification from the other Party of a request for a meeting to determine the merits of the dispute or whether a violation has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the violation or dispute.  In the event that such disputes cannot be resolved through this meet and confer process or the Parties fail to meet and confer, the Parties agree to request a settlement meeting before the assigned Magistrate Judge.[3]  In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties may submit the dispute via motion to the Magistrate Judge.  The prevailing party may seek recovery of reasonable attorney fees and costs incurred in bringing any such motion, and such fees and costs shall be awarded, pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d) or any other legal authority, and applicable case law interpreting such provisions. The parties expressly consent to have all disputes arising from this Consent Decree resolved by the assigned Magistrate Judge, and the parties waive any appeal or judicial review of a decision entered by the Magistrate Judge made within the parameters of this Consent Decree.

34.     Except as otherwise provided herein, upon entry of this Consent Decree, CSPA, on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases Court Galvanizing (and its parent company, related companies, agents, attorneys, representatives,

---

[3] The parties intend that Magistrate Judge Hollows will remain as the assigned magistrate judge as long as he is available.  In the event of his unavailability, e.g., sickness, retirement, the matter will be randomly assigned to another magistrate judge.

employees, and assigns) from, and waives, all claims, whether known or unknown, for damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed in this Action, for the alleged failure of Court Galvanizing to comply with the Clean Water Act at the Allison Parkway Facility, up to the Effective Date of this Consent Decree (hereafter "Claims"), except as specifically provided for in this Consent Decree.

35.     Except as otherwise provided herein, Court Galvanizing, on its own behalf and on behalf of its agents, attorneys, representatives, employees, and assigns, releases CSPA (and its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees) from, and waives all claims, whether known or unknown, which arise from or pertain to this Action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to this Action.

36.     The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation.  Nothing in this Consent Decree shall be construed as, and Court Galvanizing expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by Court Galvanizing of any fact, finding, conclusion, issue of law, or violation of law.  However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

**IV.     Miscellaneous Provisions**

37.     The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

38.     In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

39.     The language in all parts of this Consent Decree, unless otherwise stated, shall

be construed according to its plain and ordinary meaning.

40.     The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

41.     All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

42.     Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to CSPA pursuant to this Consent Decree shall be e-mailed and sent by U.S.  Mail, postage prepaid, and addressed as follows:

> Bill Jennings, Chairman
> California Sportfishing Protection Alliance
> 3536 Rainier Road
> Stockton, CA  95204
> Tel: (209) 464-5067
> deltakeep@aol.com

With copies sent to:

> Andrew L. Packard
> 319 Pleasant Street
> Petaluma, CA 94952
> andrew@packardlawoffices.com

Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Court Galvanizing pursuant to this Consent Decree shall be sent by e-mail and U.S.  Mail, postage prepaid, and addressed as follows:

> William Armstrong
> General Manager
> Court Galvanizing
> 4937 Allison  Parkway
> Vacaville, California
> barmstrong@jccomp.com

With copies sent to:

Ruben Castellon
Stanzler Funderburk & Castellon LLP
180 Montgomery Street, Suite 1700
San Francisco, CA 94104-4205
rcastellon@sfcfirm.com

Each party shall notify the other parties of any change in their contact information within 14 days of any such change.

43.     Signatures of the Parties transmitted by facsimile or by e-mail shall be deemed binding.

44.     No Party shall be considered to be in default in the performance of any of its obligations when a failure to perform is due to a "Force Majeure." A Force Majeure event is any act of God, war, fire, earthquake, flood, and restraint by court order or public authority. A Force Majeure event does not include normal inclement weather, such as anything less than or equal to a 100 year/24 hour storm event or inability to pay.  Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the Force Majeure.

45.     If for any reason the Court should decline to approve this Consent Decree in the form presented, the Parties shall agree to work together to modify the Consent Decree within 30 days so that it is acceptable to the Court.  **Upon signatures of the parties to this proposed Consent Decree, and pending final approval of this Consent Decree, and absent further order of the Court, the parties agree to perform all non-monetary aspects of this proposed Consent Decree commencing with January 2, 2007 as if this proposed Consent Decree had been approved.**

36.   Nothing in this Consent Decree shall preclude Court Galvanizing from implementing protective measures for storm water drainage in excess of the protections set forth herein.

1    46.    The settling Parties hereto enter into this Consent Decree, Order and Final

2  Judgment and submit it to the Court for its approval and entry as a final judgment.

3

4  Dated: _____    California Sportfishing Protection Alliance

5

6                                   By:    _____

7                                          Bill Jennings, Executive Director

8

9  Dated: _____    Court Galvanizing, Inc.

10

11                                  By:    _____

12                                         William Armstrong, General Manager

**APPROVED AND SO ORDERED.**

13

14

15  Date: February 16, 2007

                                    /s/ David F. Levi_____

16                                  UNITED STATES DISTRICT COURT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

# EXHIBIT 3

| Parameter | Value |
|---|---|
| Aluminum | 0.75 mg/l |
| Cadmium | 0.0159 mg/L |
| Iron | 1.0 mg/L |
| Lead | 0.0816 mg/L |
| Nickel | 1.417 mg/L |
| Oil & Grease | 15 mg/L |
| pH | 6.5 – 8.5 |
| Specific Conductivity | 200 µmho/cm |
| Total Suspended Solids | 100 mg/L |
| Zinc | 0.117 mg/L |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 5